# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

EDWARD LEE CARTER,
TDCJ No. 01872967,

        Petitioner,

v.

LORIE DAVIS, Director, Texas Dep't of
Criminal Justice-Correctional
Institutions Division,

        Respondent.

CIVIL NO. SA-17-CA-00736-DAE

## MEMORANDUM OPINION AND ORDER

Edward Lee Carter, an inmate in the custody of the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ-CID"), has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for aggravated sexual assault of a child and indecency with a child. As required by Rule 4 of the Rules Governing Section 2254 Cases, the Court conducted a preliminary review of the petition. Having considered the habeas application (ECF No. 1), Respondent's Answer (ECF No. 11), the record (ECF No. 12), Petitioner's Response and Objections (ECF No. 13), and applicable law, the Court finds the petition should be **DENIED.**

## I. Procedural Background

Petitioner was charged by indictment with three counts of indecency with a child by contact and two counts of aggravated sexual assault of a child. A jury found Petitioner guilty as alleged in the indictment, and on July 22, 2013, he was sentenced to consecutive terms of 11 years' confinement on one count of aggravated sexual assault and five years' confinement on a second count of aggravated sexual assault. (ECF No. 12-8). Petitioner was sentenced to concurrent terms of two years' confinement on each conviction for indecency with a child. (Id.).

Petitioner appealed and the Fourth Court of Appeals affirmed the judgment of the trial court. *Carter v. State*, No. 04–13–00532–CR, 2014 WL 5837839, *2 (Tex. App.–San Antonio 2014, pet. ref'd). Petitioner filed a petition for discretionary review with the Texas Court of Criminal Appeals ("TCCA"), which was refused. *Carter v. State*, No. PD–0494–16 (Tex. Crim. App. 2016). On October 3, 2016, Petitioner filed an application for a state writ of habeas corpus, which was denied without written order based on the trial court's findings. (ECF No. 12-19). Petitioner filed the instant federal petition, alleging he was denied his right to the effective assistance of counsel and subjected to a biased trial court and trial court error.

## II. Factual Background

In its brief on direct appeal, the State summarized the facts as follows:

Eighteen-year-old J.C. testified to several instances of sexual abuse by her father starting when she was nine-years old. At the time of her testimony, J.C. was living with her mother in Florida. J.C. was young when her parents separated. She lived with her dad in San Antonio when he began sexually abusing her.

During her testimony, J.C. recalled going to her dad when she was young to tell him about hair growing between her legs. He told her that he could "fix it" and proceed[ed] to take her pants off, put his head between her legs and start licking her vagina. She explained that he sexually abused her repeatedly over the years. The abuse included him touching her vagina under her clothes, licking and fondling her breasts and making her [. . .] perform oral sex on him. She described [Carter] teaching her how to perform oral sex by showing her pornographic videos.

She recalled one occasion when [Carter] threatened her by telling her that if she did not perform oral sex on him, "he would go to jail" and she "would be placed in foster care."

J.C. testified that she initially told her paternal grandmother, Ora Jackson, about [Carter] sexually abusing her. However, [Carter]'s mother did not do anything about J.C.'s disclosure. Three years later, when J.C. was fifteen-years old, she stayed with her paternal grandmother and paternal aunt, Vertus Williams, who both lived in Kansas. J.C. testified that she was afraid [Carter] would start having sex with her so she told them about [Carter]'s continued sexual abuse. Her aunt reported the abuse and an investigation ensued. For a period of time, J.C. lived with her aunt and her grandmother. However, she eventually decided to move back to San Antonio to live with her dad. J.C. admitted moving back in with [Carter] appeared strange due to the prior abuse but explained she felt sorry for

him and loved him. In fact, she stated that she still loves him because he is her dad.

Because of the sexual abuse investigation, CPS placed J.C. in foster care. She admitted to running away from the foster family that wanted to adopt her.

J.C. explained that after disclosing the abuse she later told several people that [Carter] never sexually abused her. She testified that her retraction was a lie and explained she did it because she loved her father and did not want him to get in trouble. She also explained she lied about [Carter] not sexually abusing her because she did not want to go into foster care. J.C. told the jury that the truth was her father did sexually abuse her as she described.

Trial counsel cross-examined J.C. extensively regarding inconsistencies in her account of events and what she told other people.

Amanda Eason, [Carter]'s ex-wife, testified. They were together for approximately 4 years. J.C. was approximately 6 or 7 years old when they first started dating. She described J.C. as an extremely quiet child who at the time she assumed was simply shy. She and [Carter] lived on and off together because of their tumultuous relationship. She explained during their marriage [Carter] had an affair with a 16-year-old girl who became pregnant. Eason explained even after they divorced they continued to see one another because they share a child.

When Eason heard about J.C.'s allegation of sexual abuse, she asked [Carter] about it. [Carter] insisted his mother made up the allegation. Eason testified she believed [Carter] because she thought his mother was capable of such behavior. Some time later Eason had a second conversation with [Carter] about the sexual abuse allegation. She explained that the conversation began with her asking [Carter] what he was going to do about J.C. During the course of the conversation, [Carter] admitted to sexually abusing J.C. once.

[Carter] told Eason it happened after they split up causing him to go "temporarily insane." He told Eason he couldn't think, and that he was "unable to control himself." She described [Carter] as upset and crying during this conversation. He kept saying to Eason that he hoped J.C. could forgive him and that he didn't know how to make it right. [Carter] also told Eason during the conversation that he had sent J.C. to stay with his mother because he "couldn't control himself."

Later, J.C. moved in with Eason. Eason explained that she and J.C. believed [Carter] did not know where J.C. was living or that she was attending Roosevelt High School. However, one day at school a girl that J.C. didn't know gave her a note. The note was from [Carter] and it contained a bible scripture. Eason explained the note caused J.C. to have a panic attack and J.C. believed [Carter] intended to hurt her. They made a police report the day J.C. received the note.

The State called Dr. Nancy Kellogg to offer her opinion on delay in disclosure and recantation of abuse, behaviors frequently exhibited by children who have been sexually abused. The trial court first conducted a 701 hearing outside of the jury's presence. At the conclusion of the hearing, trial counsel did not object to the admission of Dr. Kellogg's testimony on delayed disclosure or recantation, but rather any medical opinion regarding J.C.'s sexual assault examination. Based

on the evidence, the trial court determined Dr. Kellogg could offer her testify to the jury.

[Carter] called several witnesses during the guilt/innocence phase to testify regarding [Carter] having several small round bumps on his penis. This testimony was intended to undermine J.C.'s claim of sexual abuse since she never recounted or described [Carter] having small bumps on his penis.

(ECF No. 12-7 at 1–7).

### III. <u>Standard of Review</u>

#### A. Review of State Court Adjudications

Petitioner's federal petition is governed by the heightened standard of review provided by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States", or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different

conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show the state court's decision was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). As long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Carter must show the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### B. Review of Sixth Amendment Claims

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense. *Id.* at 687-88, 690. According to the Supreme Court, "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

In determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland*, 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 17

(2013) (quoting *Strickland*, 466 U.S. at 690). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). As the Supreme Court explained, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. For this reason, every effort must be made to eliminate the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689; *see also* *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.") (citations omitted). Accordingly, there is a strong presumption an alleged deficiency "falls within the wide range of reasonable professional assistance." *Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### IV.    Analysis

#### A. Ground One

Petitioner alleges he was denied a fair trial because the trial judge was corrupt, took bribes from lawyers, and was later convicted of manipulating criminal cases. Petitioner raised these issues in his application for state writ of habeas corpus, which the TCCA denied. The TCCA's implicit and explicit factual findings and credibility determinations are entitled to a

presumption of correctness, which may only be overcome by clear and convincing evidence. 28

U.S.C. § 2254(e)(1); *Marshall v. Lonberger*, 459 U.S. 422, 433 (1983); *Neal v. Puckett*, 239 F.3d

683, 696 (5th Cir. 2001). Petitioner fails to demonstrate the TCCA's decision was an

unreasonable application of clearly established federal law or an unreasonable application of the

facts in light of the evidence presented.

Further, in addressing the issue of bias affecting a defendant's constitutional right to a

fair trial, the Fifth Circuit stated:

> We note that the United States Supreme Court has consistently enforced the basic
> right to due process and found that decision makers are constitutionally
> unacceptable when: (1) the decision maker has a direct personal, substantial, and
> pecuniary interest in the outcome of the case; (2) an adjudicator has been the
> target of personal abuse or criticism from the party before him; and (3) a judicial
> or quasi judicial decision maker has the dual role of investigating and adjudicating
> disputes and complaints.

*Bigby v. Dretke*, 402 F.3d 551, 558 (5th Cir. 2005) (citing *Bracy v. Gramley*, 520 U.S. 899, 909

(1997)). To demonstrate a due process violation, a petitioner must show that a genuine question

exists regarding the judge's impartiality. *Id.*; *see also Nethery v. Collins*, 993 F.2d 1154, 1157

(5th Cir. 1993).

Petitioner does not allege the trial judge had a direct personal, substantial, and pecuniary

interest in the outcome of the case; had been the target of personal abuse or criticism from the

party before him; or had the dual role of investigating and adjudicating disputes and complaints.

Nor has Petitioner otherwise established that a genuine question exists regarding the judge's

impartiality. Instead, Petitioner makes conclusory assertions that the trial judge's subsequent

conviction rendered him bias and cites to the following as "evidence" of this bias: the trial judge

failed to advise the venire panel of the range of punishment; the trial judge failed to have

Petitioner present in court when a jury question was read; the trial judge failed to answer the jury

question directly; and the record was altered and things were omitted from the record. However, these alleged "failures" do not establish the trial judge "was influenced by interest apart from the administration of justice and that this bias or prejudice resulted in rulings based on other than facts developed at trial." *See Nethery*, 993 F.2d at 1157. Absent such evidence, a court cannot consider a habeas petitioner's conclusory assertions to be of probative evidentiary value. *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983) (citing *Woodard v. Beto*, 447 F.2d 103, 104 (5th Cir. 1971)). Accordingly, Petitioner's claim is DENIED.

## B. Ground Two

Petitioner next maintains he was denied effective assistance of appellate counsel because counsel failed to raise various issues on appeal, including sufficiency of the evidence, and further, failed to send Petitioner a copy of the brief. Petitioner contends appellate counsel "chose not to bring up reviewable issues," but instead raised issues not preserved for review. He maintains that appellate counsel should have raised the following grounds on appeal: the trial judge resigned amidst allegations of corruption; venire members, including five who served on the jury panel, stated they would be unable to consider the lower end of the punishment range if Petitioner were convicted; a venire member, who later became the jury foreman, stated he would have a problem if Petitioner failed to take the stand; neither Petitioner nor the complainant were in Texas on or about May 31, 2004, the date alleged in the indictment; and complainant's allegations and testimony were false as evidenced by her inability to recall distinguishing marks on Petitioner's genitals.

A criminal defendant has a constitutional right to the effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 393 (1985). To render effective assistance, appellate counsel "must master the trial record, thoroughly research the law, and exercise judgment in

identifying the arguments that may be advanced on appeal." *McCoy v. Court of Appeals of Wis.*, 486 U.S. 429, 438 (1988). To succeed on an ineffective assistance of appellate counsel claim, a petitioner must first show his counsel's performance was objectively unreasonable. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013). If the petitioner is able to establish appellate counsel's performance was deficient, he must then demonstrate prejudice arising from the deficient performance. To establish prejudice, the petitioner must show a reasonable probability that, but for his counsel's unreasonable performance, he would have prevailed on appeal. *Smith*, 528 U.S. at 286; *Moreno v. Dretke*, 450 F.3d 158, 168 (5th Cir. 2006). An appellate attorney need not, and should not, raise every non-frivolous claim, but rather should "winnow out weaker arguments" to maximize the likelihood of success on appeal. *Smith*, 528 U.S. at 288; *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

Petitioner raised these same issues in his application for state writ of habeas corpus. In response, appellate counsel filed an affidavit refuting Petitioner's allegations. (ECF No. 12-19 & ECF No. 12-22). The state court found appellate counsel's affidavit to be truthful and credible and issued the following Findings of Fact:

    a. [Appellate Counsel] denies that he failed to raise numerous errors on appeal.

    b. After receiving the clerk's record and the reporter's record in this case, appellate counsel made a thorough examination of each to determine if Applicant was denied any procedural or substantive rights.

    c. Included in the examination of the clerk's record: whether there was any error in the indictment, whether there was any error in the court's charge, whether trial counsel had failed to preserve issues by failing to raise matters before trial, and any other matter that may have denied Applicant his rights to a fair trial and effective representation of counsel at trial.

    d. Included in the examination of the reporter's record: whether any objectionable evidence was received and admitted by the court, objected to or not, whether the evidence was sufficient to support the conviction, whether

any witness who testified was competent to do so, and any other matter that could arguabl[y] be presented as an issue on appeal.

e. After a thorough examination, counsel presented to the Court of Appeal the only possible errors that through his experience, knowledge, and research could be ethically presented.

f. Applicant bases his assertion of insufficiency of the evidence on testimony and evidence presented at trial regarding the condition of his penis.

g. Testimony at trial indicated that during the commission of the offense, Applicant's penis had observable white bumps present on the tip of his penis.

h. The indictment alleges the dates of the offenses ranging from May 31, 2004 -- August 25, 2009.

i. Photographs of Applicant's penis offered at trial were taken around March of 2013 [and did not show the presence of any such white bumps].

j. In [appellate counsel's] legal opinion, the non-existence of the white bumps [in the photographs submitted at trial] four years after the commission of the offense did not, and does not, rise to the level of insufficient evidence to support the conviction.

k. The issue regarding appellate counsel's failure to send Applicant a copy of the brief was raised and resolved in Applicant's prior application for writ of habeas.

(ECF No. 12-22).[1] The trial court recommended the application be denied and, thereafter, the TCCA denied Petitioner's Application for Writ of Habeas Corpus. (ECF No. 12-19).

The TCCA's implicit and explicit factual findings and credibility determinations are entitled to a presumption of correctness, which may only be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Marshall*, 459 U.S. at 433; *Neal*, 239 F.3d at 696. Petitioner has not demonstrated that the state court's decision regarding his claims was contrary to, or

---

[1] Petitioner appears to argue that because the complainant testified she could not recall any noticeable things around or on Petitioner's penis, despite testimony from other witnesses that "in 1998 and thereafter," the tip of Petitioner's penis had visible white bumps, the evidence was insufficient to convict him; therefore, his appellate attorney was ineffective for failing to raise this issue on appeal. However, appellate counsel stated he reviewed the entire record, which included the detailed testimony of the complainant as to Petitioner's actions constituting aggravated sexual assault, and presented only those issues he believed could ethically be raised. Accordingly, Petitioner fails to establish counsel's performance was deficient or that he was prejudiced. *Smith*, 528 U.S. at 285-6.

involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. Nor has he shown that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

Further, although Petitioner maintains appellate counsel was ineffective in failing to raise various grounds on appeal, an appellate attorney is not required to raise every non-frivolous claim, but rather should "winnow out weaker arguments" to maximize the likelihood of success on appeal. *Smith*, 528 U.S. at 288; *Jones*, 463 U.S. at 751. Appellate counsel stated he thoroughly examined the trial record, and presented the only possible errors that through his experience, knowledge, and research could be ethically presented. Petitioner failed to show that his counsel's performance was objectively unreasonable or that there was a reasonable probability that, but for counsel's deficiency, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694.

Accordingly, Petitioner's claim regarding ineffective assistance of appellate counsel is DENIED.

### C. Ground Three

Petitioner also complains he was denied effective assistance of counsel because his trial counsel failed to strike a venire member for cause; failed to request a continuance or to make the dates in the indictment a defense; offered a State's exhibit into evidence; failed to call a material witness; failed to object to an extraneous unproven statement; failed to object to the testimony of Dr. Kellogg; and failed to have Petitioner present throughout the proceedings. Respondent contends Petitioner failed to exhaust his claims that he was denied effective assistance of counsel because his attorney failed to object to an extraneous unproven statement and to the testimony of

Dr. Kellogg, as these claims were not raised in Petitioner's state habeas application or petition for discretionary review.

Before a federal court will consider alleged errors, a petitioner must exhaust his claims by providing the highest state court a fair opportunity to apply the controlling federal constitutional principles to those same legal claims and factual allegations and, if necessary, correct alleged deprivations of federal constitutional rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Castille v. Peoples*, 489 U.S. 346, 348 (1989); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Martinez v. Johnson*, 255 F.3d 229, 238 (5th Cir. 2001). This "ensures that the state courts have the opportunity fully to consider federal-law challenges to a state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment." *Duncan v. Walker*, 533 U.S. 167, 178-79 (2001) (citations omitted).

While a petitioner need not spell out each syllable of the claim to satisfy the exhaustion requirement, the substance of the federal claim must be the same as the one presented in state court. *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998); *Burns v. Estelle*, 695 F.2d 847, 849 (5th Cir. 1983). Thus, a federal court must first determine whether a petitioner's claim has been presented "in a significantly different and stronger evidentiary posture than it was before the state courts." *Dowthitt v. Johnson*, 230 F.3d 733, 746 (5th Cir. 2000) (quoting *Joyner v. King*, 786 F.2d 1317, 1320 (5th Cir. 1986)); *see also Brown v. Estelle*, 701 F.2d 494, 495-96 (5th Cir. 1983).

In this case, Petitioner did not allege ineffective assistance in his petition for discretionary review. In his application for state writ of habeas corpus, Petitioner alleged ineffective assistance of both appellate and trial counsel; however, he did not allege that trial counsel was ineffective for failing to object to unproven extraneous statements and to the testimony of Dr. Kellogg.

While technically Petitioner has failed to exhaust his state remedies by not first presenting these claims to the state court, were this Court to require Petitioner to do so, the TCCA would find them to be procedurally barred under the Texas abuse-of-the-writ doctrine. *See Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (quoting *Ex Parte Barber*, 879 S.W.2d 889, 892 n. 1 (Tex. Crim. App. 1994)). "A procedural default . . . occurs when a prisoner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). If no state avenue of relief remains open to petitioner, returning to the state courts would be futile and exhaustion is technically satisfied. *Woodford*, 548 U.S. at 92-93. In this circumstance, the claim is exhausted but procedurally defaulted. *Nobles*, 127 F.3d at 420.

Consequently, federal habeas relief on this claim is barred unless Petitioner can demonstrate cause for the default and actual prejudice arising from the default, or demonstrate the failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. To establish cause, Petitioner must show some external force impeded his efforts to comply with the state's procedural rule regarding proper presentment of the claim in the state courts. *Id.* at 753. To demonstrate prejudice, Petitioner must show the error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Smith v. Quarterman*, 515 F.3d 392, 403 (5th Cir. 2008) (internal quotations omitted). To establish a fundamental miscarriage of justice, Petitioner must make a "persuasive showing" he is actually innocent of the crime of conviction, i.e., that as a factual matter, he did

not commit the crime for which he was convicted. *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).

Petitioner maintains cause for the default is established by his claim of ineffective assistance of counsel. (EFC No. 13). He states that the trial judge, whom he maintains was biased, appointed his appellate counsel, knowing he would be ineffective in failing to raise these issues on appeal. For reasons previously stated, Petitioner has not demonstrated the trial judge was biased or that appellate counsel's performance was constitutionally ineffective; as a result, Petitioner fails to show cause for the default. *Coleman*, 501 U.S. at 752 (citing *Murray v. Carrier*, 477 U.S. 478, 487 (1986)). Petitioner also fails to show prejudice or that, as a factual matter, he did not commit the crime for which he was convicted. Therefore, Petitioner's claim of ineffective assistance of counsel based on counsel's failure to object to an extraneous unproven statement and to the testimony of Dr. Kellogg must be dismissed.

The Court turns now to Petitioner's remaining claims of ineffective assistance of trial counsel which were properly raised in Petitioner's application for state writ of habeas corpus.

### i.    *Failure to have Petitioner present throughout the proceedings*

Petitioner alleges his counsel was ineffective in failing to have him present when a jury question was read. Petitioner states that during deliberations, the jury inquired whether the witnesses were placed under oath and notified that they were testifying under penalty of perjury. Petitioner complains he was not brought to the courtroom to "hear this discussion, nor was he able to respond or object to the note from the jury." In his affidavit, filed in response to Petitioner's application for state writ of habeas corpus, trial counsel responded that Petitioner was not brought into the courtroom because the court simply instructed the jury members to

continue their deliberations and there was no further discussion or proceedings. (ECF No. 12-22).

Although Petitioner claims he was deprived of the opportunity to respond or object to the jury note, Petitioner's attorney was present and determined that the trial judge's instruction was sufficient. Further, Petitioner does not state how he was prejudiced by this alleged deficiency. Consequently, Petitioner fails to establish either prong as required by *Strickland.* 466 U.S. at 687-88, 690.

### ii.    *Failure to strike a venire member for cause*

Petitioner complains trial counsel failed to challenge a venire member who later served as the jury foreman. This venire member allegedly indicated he would have an issue if Petitioner failed to take the stand, and stated that a close family member or friend had been a victim of sexual abuse. In his affidavit filed in Petitioner's state habeas proceedings, trial counsel stated this venire member's statements did not appear to be definitive enough for a challenge for cause and he was not peremptorily struck because there were other venire members who appeared more detrimental to defendant's case that were struck instead. (ECF No. 12-22). Additionally, trial counsel stated that Petitioner participated in the juror selection process and agreed with all the defense strikes. (Id.).

Although Petitioner now argues trial counsel was ineffective for failing to strike this venire member, trial counsel appears to have made a strategic decision regarding the decision whether to strike the venire member in question. It is well settled that counsel's "conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton,* 343 F.3d at 752-53. Petitioner fails to show his trial counsel's decision not

to strike this venire member was so ill chosen as to permeate the entire trial with obvious unfairness or that but for counsel's alleged error, the result of the proceedings would haves been different. *See Strickland*, 466 U.S. at 693-94.

### iii. *Making the dates in the indictment a defense*

Petitioner also maintains that once the prosecution announced it was "fixing the dates in the indictment" to read "on or about," his attorney should have objected or requested a continuance so he could properly prepare a defense. Petitioner maintains neither he nor the complainant were in Texas "on or about" May 31, 2004, and therefore, Petitioner should not have been convicted of this charge. However, in his state habeas affidavit, trial counsel stated the date alleged in the indictment was not a major issue that required a motion for continuance and, in fact, he anticipated the dates in the indictment would be argued as "on or about" rather than a specific date. (ECF No. 12-22).

In determining whether counsel performed deficiently, the Court is mindful of the strong presumption that counsel's conduct "falls within the wide range of reasonable professional assistance." *Feldman*, 695 F.3d at 378 (quoting *Strickland*, 466 U.S. at 689). Moreover, even assuming counsel was somehow deficient in not objecting to the dates alleged in the indictment prior to trial, Petitioner fails to meet his burden of showing he was prejudiced or that but for trial counsel's error, the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 693-94.

### iv. *Offering a State's exhibit into evidence*

Petitioner next contends trial counsel was ineffective in offering a State's exhibit into evidence, despite previously objecting to this same exhibit on various grounds. In his affidavit in Petitioner's state habeas action, trial counsel stated that, while he initially objected to this exhibit

based on lack of predicate, he reoffered the exhibit as a defense exhibit as a matter of trial strategy to help explain its contents.[2] (EFC 12-22).

In reintroducing the exhibit, trial counsel appears to have made a "conscious and informed decision on trial tactics and strategy [which] cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton*, 343 F.3d at 752-53. Here, Petitioner fails to identify the exhibit, much less show how its introduction permeated the entire trial with obvious unfairness or that but for counsel's alleged error, the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 693-94.

### v. *Failing to call a material witness*

Petitioner also complains trial counsel failed to call a material witness to the stand. Petitioner argues Tonette Davis could and would have testified as to the complainant's motivation and bias, as well as that of Amanda Eason. In his affidavit, trial counsel states that, after interviewing Ms. Tonette Davis, who was subpoenaed, he concluded her testimony was not useful and could instead raise issues that would be more detrimental to the defense. (EFC No. 12-22).

Petitioner has not established counsel's performance was deficient or that any alleged deficiency prejudiced his defense. Claims that trial counsel erred by failing to call a witness are not favored because the presentation of testimonial evidence is a matter of strategy and further, allegations of what a witness would have testified to are largely speculative. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009); *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981). "Ordinarily, a defendant's failure to present some evidence from the uncalled witness regarding that witness's potential testimony and willingness to testify would be fatal to an ineffective

---

[2] This exhibit is not identified in the record and is referred to only as a "note."

assistance of counsel claim." *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007). To establish he was prejudiced by counsel's failure to call a witness, a habeas petitioner must demonstrate both "that the testimony would have been favorable, [and] that the witness would have testified at [the proceeding]." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (quoting *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

Here, Petitioner fails to set out the content of the witness's proposed testimony or show that the testimony would, in fact, have been favorable. Further, although Petitioner argues trial counsel was ineffective for failing call Ms. Davis as a witness, trial counsel made a strategic decision regarding his decision not to call this witness based on his belief that her testimony had the potential to be more disadvantageous than advantageous. Petitioner fails to show his trial counsel's decision in this regard was so ill chosen as to permeate the entire trial with obvious unfairness or that but for counsel's alleged error, the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 693-94.

With the exception of the two claims initially addressed, Petitioner raised his claims regarding trial counsel's ineffective assistance of counsel in his application for state writ of habeas corpus, which the TCCA denied. The TCCA's implicit and explicit factual findings and credibility determinations are entitled to a presumption of correctness, which may only be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Marshall*, 459 U.S. at 433; *Neal*, 239 F.3d at 696. Petitioner has failed to demonstrate the TCCA's decision was an unreasonable application of clearly established federal law or an unreasonable application of the facts in light of the evidence presented. Accordingly, Petitioner's claim that he was denied effective assistance by his trial counsel lacks merit and is DENIED.

**D. Ground Four**

Finally, Petitioner maintains the trial court abused its discretion by failing to invoke the rule; failing to allow a venire member to be struck for cause; failing to have Petitioner present throughout the proceedings; failing to rule on motions; failing to sustain an objection to Dr. Kellogg's testimony; failing to grant his motion for an instructed verdict; and failing to grant a mistrial. On state habeas review, the court found these claims were procedurally barred.

Generally, a federal habeas court "will not consider a claim that the last state court rejected on the basis of an adequate and independent state procedural ground." *Brewer v. Quarterman*, 466 F.3d 344, 346-47 (5th Cir. 2006). However, if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law" or if the default would work "a fundamental miscarriage of justice," the court will consider the procedurally defaulted claim. *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (citing *Coleman*, 501 U.S. at 750).

Petitioner contends his appointed counsel was ineffective and that he raised these issues at the earliest opportunity. (EFC No. 13). However, even assuming this amounts to cause, Petitioner fails to demonstrate actual prejudice or that he is actually innocent of the crime for which he was convicted. As a result, habeas review is foreclosed and his claim is dismissed with prejudice.

## V. Miscellaneous Motions

Petitioner also seeks to expand the record and requests an evidentiary hearing, arguing he did not receive a full and fair state court evidentiary hearing resulting in reliable findings. (ECF No. 14).[3] He maintains there are facts in dispute and "believes that an evidentiary hearing will

---

[3] Petitioner has also filed a motion seeking to get confirmation that the Court received his reply, as well as a copy of "the docket sheet and other documents or parts of the records in the clerk's office pertaining to" this case. (ECF No.

show and prove that Petitioner's trial court and it's [sic] proceedings are unreliable." Petitioner contends the reporter's record does not reflect what actually took place during the trial and maintains the record was altered to conceal misconduct.

A habeas petitioner seeking additional discovery must establish good cause to expand the record. *Hill v. Johnson*, 210 F.3d 481, 487 (5th Cir. 2000) (quoting Rules Governing Section 2254 Cases 6(a) ("A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.")). A petitioner may demonstrate good cause by establishing a prima facie case for relief. *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000) (quoting *Harris v. Nelson*, 394 U.S. 286, 289 (1969)). A request to expand the record must be "specific, as opposed to merely speculative or conclusory." *Hill*, 210 F.3d at 487 (citing *Murphy*, 205 F.3d at 814). The District Court has discretion in determining whether to expand the record. *Id.*

Section 2254(e)(2) addresses the criteria for when an evidentiary hearing should be held, providing that:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> (A) the claim relies on—
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear

---

16). Petitioner's motion is **DENIED**; however, Petitioner shall be provided a copy of this Court's order, which references his reply.

> and convincing evidence that but for constitutional error, no reasonable
> factfinder would have found the applicant guilty of the underlying
> offense.

*Id.* However, overcoming the narrow restrictions of § 2254(e)(2) does not guarantee a petitioner an evidentiary hearing, it merely opens the door for one; once a petitioner overcomes the obstacles of § 2254(e)(2), under Rule 8 of the Rules Governing § 2254 Cases, the district court retains discretion over the decision to grant an evidentiary hearing. *Murphy*, 205 F.3d at 815. "In determining whether to grant a hearing, the judge must review the answer [and] any transcripts and records of state-court proceedings . . . to determine whether an evidentiary hearing is warranted." *Richards v. Quarterman*, 566 F.3d 553, 562-63 (5th Cir. 2009) (internal quotations omitted). In making this determination, the Court must consider whether an evidentiary hearing could "enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 563.

If the district court has sufficient facts to "make an informed decision regarding the merits of a claim," it may properly deny the petitioner an evidentiary hearing. *Murphy*, 205 F.3d at 816. In *Schriro*, 550 U.S. at 474, the Supreme Court explained "[b]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." In practical effect, this means that when the state-court record "precludes habeas relief" under the limitations of § 2254(d), a district court is "not required to hold an evidentiary hearing." *Id.*

In this case, Petitioner fails to establish good cause for expanding the record and presents arguments that are entirely speculative and conclusory. Similarly, Petitioner's conclusory assertions regarding the likely merits of his allegations are insufficient to warrant an evidentiary hearing. Further, the motions, files, and records of the case show Petitioner is not entitled to

relief. Therefore, Petitioner's motion to expand the record and for an evidentiary hearing is DENIED. (ECF No. 14).

## VI. Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that reasonable jurists would not debate the conclusion that Edward Lee Carter was not entitled to federal habeas relief. As such, a COA will not issue.

## VII. Conclusion and Order

Petitioner has failed to establish that the state court's rejection of the aforementioned claims on the merits during his state habeas corpus proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the Petitioner's state trial, appellate, and habeas corpus

proceedings. As a result, Edward Lee Carter's federal habeas corpus petition does not warrant federal habeas corpus relief.

Accordingly, based on the foregoing reasons,

**IT IS HEREBY ORDERED** that:

1. Federal habeas corpus relief is **DENIED** and Petitioner Edward Lee Carter's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE;**

2. No Certificate of Appealability shall issue in this case; and

3. All other remaining motions, if any, are **DENIED**, and this case is now **CLOSED**.

**It is so ORDERED.**

**SIGNED** this ___4___ day of April, 2018.

DAVID A. EZRA
**SENIOR U.S. DISTRICT JUDGE**